**The TRUSTEES OF the UNIVERSITY OF PENNSYLVANIA**

v.

**LEXINGTON INSURANCE COMPANY**

v.

**INSURANCE COMPANY OF NORTH AMERICA.**

Civ. A. No. 88–3455.

United States District Court, E.D. Pennsylvania.

March 15, 1989.

Harvey Bartle, III, Dechert Price & Rhoads, Philadelphia, Pa., for plaintiff.

Albert J. Schell, Jr., Post & Schell, P.C., Philadelphia, Pa., for Lexington Ins. Co.

Ronald B. Hamilton, Philadelphia, Pa., for Ins. Co. of North America.

## MEMORANDUM AND ORDER

KATZ, District Judge.

In May, 1987 plaintiff, which owns and operates the Hospital of the University of Pennsylvania ("HUP"), paid $500,000 to Victor and Arcadia Melendez as its portion of a settlement of a suit which had been commenced by the Melendezes against HUP and another party in the Court of Common Pleas. In April, 1988 plaintiff instituted this action against its excess insurance carrier, defendant Lexington Insurance Company ("Lexington"), claiming that $400,000 of the settlement amount was covered under its policy with Lexington. In June, Lexington filed a third-party complaint against plaintiff's primary insurance carrier, Insurance Company of North America ("INA"), alleging that the entire settlement amount was covered under plaintiff's policy with INA,[1] and that as a result, plaintiff's settlement of the Melendez lawsuit gave rise to no liability on the part of Lexington.

The case is currently before the court on INA's motion for summary judgment against Lexington, and Lexington's motion for summary judgment against plaintiff.[2] For the reasons that follow, I shall grant summary judgment on behalf of INA against Lexington, and deny Lexington's motion for summary judgment.

1. Under the insurance contract between INA and HUP, INA agreed to provide three basic types of coverages: property insurance (Section I), comprehensive crime insurance (Section II), and liability insurance (Section III). Under the liability insurance provisions of the policy, INA agreed to provide to HUP eight types of

---

1. HUP's deductible amount under its policy with INA was $100,000 per occurrence. Stipulation of Facts, Exhibit 1 at 32.

2. The parties extensively argued the legal issues in this case at the Pretrial Conference on January 18, 1989.

separately identified and defined coverages, designated as Coverages A through H. All parties agree that Coverage D, Malpractice Liability, is the only coverage applicable to this dispute. Under that liability coverage, INA agreed to pay

all sums which the Insured shall become legally obligated to pay with respect to occurrences anywhere during the policy period:

\* \* \* \* \* \*

D. Malpractice Liability

As damages because of injury, including death, sustained by any person, or property arising out of:

1. Malpractice, error or mistake committed during the policy period:

\* \* \* \* \* \*

c. in handling or performing autopsies on deceased human bodies....

Stipulation of Facts, Exhibit 1 at pages 24–25.

2. The parties stipulate that any and all claims made by the Melendezes against HUP relevant to this action were in the nature of damages because of injury sustained by them, or for injury to property, arising out of the handling of a deceased human body from February 2, 1982 to February 4, 1982. Stipulation of Facts, No. 39.

3. The parties stipulate that all claims made by the Melendezes against HUP arose out of HUP's alleged liability for damages to the Melendezes arising out of the handling of a deceased human body, as described in the INA policy in Section III, Subsection I.D.1.c. Stipulation of Facts, No. 40.

4. It is undisputed that Lexington's policy is an excess policy which obligates Lexington to pay only that amount of any claim which is in excess of the applicable limits of the INA policy and any other collectible underlying policy.[3] The controlling issue in this case in its current posture is whether the policy limit of the INA primary policy applicable to the Melendez settlement is only $100,000, as INA and HUP contend, or $1 million, as Lexington contends.

5. Section III, Subsection IV.A.1. of the INA policy sets out INA's limits of liability under the policy as follows:

The Company's Limits of Liability for Coverages A, B, C, D & E, or any combination thereof, shall be $1,000,000 as the result of any one occurrence except as with respect to Coverage D, the following limits of liability are applicable:

(a) As respects "Health Care Providers", other than hospitals, the Company's Limit of Liability shall be Basic Coverage Insurance, as defined by the "Health Care Service Malpractice Act" or $100,000 each occurrence and $300,000 annual aggregate for each such Health Care provider; whichever is the greater; and

(b) As respects Hospitals the Company's Limit of Liability shall be Basic Coverage Insurance, as defined by the "Health Care Service Malpractice Act" or $100,000 each occurrence and $1,000,000 annual aggregate; whichever is the greater.

Stipulation of Facts, Exhibit 1 at pages 29–30.

6. The Health Care Services Malpractice Act, 40 P.S. §§ 1301.101–.1006, defines "basic coverage insurance" in Article VII,

---

3. The parties stipulate that on October 5, 1985, the Pennsylvania Medical Professional Liability Catastrophe Loss Fund ("CAT Fund"), a Commonwealth of Pennsylvania agency that serves as an excess malpractice insurer for health care providers, notified HUP that its aggregate coverage limit of $3,000,000 for the 1981–1982 policy year had been exhausted. Stipulation of Facts, No. 28 and Exhibit 7. Lexington asserts that it is irrelevant that the Fund coverage for HUP was exhausted, since that coverage did not apply to the Melendez case. See Lexington's Answer to INA's Motion for Summary Judgment, Exhibits A, B, and C. HUP and INA say that the Melendez claim was within the coverage of the CAT Fund. This issue need not be decided here. Under the relevant provisions of the INA and Lexington policies it makes no difference whether or not a Coverage D claim against HUP is within the CAT Fund definition. Any amount exceeding the liability limit would be covered under the CAT Fund, or, in the event the CAT Fund was exhausted or did not apply, under the Lexington policy.

which establishes the CAT Fund. The statute provides, in pertinent part:

> A health care provider, other than hospitals ... shall insure or self-insure his professional liability in the amount of $100,000 per occurrence and $300,000 per annual aggregate, and hospitals ... shall insure or self-insure their professional liability in the amount of $100,000 per occurrence, and $1,000,000 per annual aggregate, hereinafter known as *"basic coverage insurance"*.... In the event that amounts which shall become payable by the fund shall exceed ... $20,000,000 in any year following calendar year 1980, basic coverage insurance commencing in the ensuing year shall become $150,000 per occurrence and $450,000 per annual aggregate for health care providers other than hospitals for which basic coverage insurance shall become $150,000 per occurrence and $1,000,000 per annual aggregate.

40 P.S. § 1301.701(a)(1)(i) (emphasis added).

7. The parties agree that in February, 1982 the amount of basic coverage insurance for hospitals under the terms of the statute was $100,000 per occurrence, and $1,000,000 per annual aggregate.

8. The Declarations of the INA policy limit Coverage D (Malpractice) liability for hospitals to $100,000 per occurrence and $1,000,000 annual aggregate. Stipulation of Facts, Exhibit 1 at page 3 (Revision # 1, dated 6/30/81).

9. HUP's excess insurance policy with Lexington provides up to $10,000,000 per occurrence of personal injury in excess of the amount recoverable under the underlying insurance. Stipulation of Facts, Exhibit 3, Declarations, Item 3(A). The Lexington policy expressly incorporates the INA policy with a "$100,000 Each Occurrence" liability limit as the underlying insurance for "Hospital Liability." Stipulation of Facts, Exhibit 3, Schedule of Underlying Coverage.

10. On the face of the foregoing provisions, it is clear and unambiguous that the $100,000 limit of liability as set forth in Section III, Subsection IV.A.1.b., and in the policy Declarations, applies to *all* hospital claims under Coverage D, and thus to the Melendezes' claim.

11. Lexington's argument to the contrary essentially runs as follows: The Health Care Services Malpractice Act requires hospitals, among other things, to "insure [their] professional liability...." 40 P.S. § 1301.701(a). Inasmuch as the term "basic coverage insurance" in its statutory context determines the amount of professional liability insurance required, 40 P.S. § 1301.701(a)(1)(i), and the statute defines "professional liability" as liability "arising out of any tort or breach of contract causing injury or death resulting from the furnishing of medical services which were or should have been provided," 40 P.S. § 1301.103, it follows, the argument runs, that the $100,000 limitation on liability in the INA policy must be restricted to that type of liability for which basic coverage insurance is statutorily required, *i.e.*, professional liability. Liability for handling or mishandling a stillborn fetus does not fall within the definition of professional liability because it does not "result[ ] from the furnishing of medical services which were or should have been provided." Therefore, the argument concludes, the $100,000 limitation on liability does not apply to liability for handling or mishandling a stillborn fetus.

12. Logically, Lexington's argument is untenable. It's basic flaw is that it arbitrarily transplants the entire statute into the insurance contract. The reference in the policy to "Basic Coverage Insurance, as defined by the 'Health Care Service Malpractice Act,'" does not, as Lexington maintains, "expressly incorporate the Health Care Services Malpractice Act," Lexington's Motion for Summary Judgment, at page 8, but serves simply to set a quantitative limit on INA's liability for all Coverage D claims.

13. Lexington's position is untenable for several reasons. The first is contextual. The term basic coverage insurance appears in the "Limits of Liability" part of the contract, which is designed to quantify in dollar terms the limits of liability under Coverages A through H. The second rea-

son is that the applicable contract language is clear and unambiguous. The statute provides that the basic coverage insurance amount shall be no lower than $100,000 per occurrence, and $1,000,000 per annual aggregate, 40 P.S. § 1301.701(a)(1)(i). If the policy's reference to basic coverage insurance were meant to serve a substantive function, there would be no need to state the limit of liability in terms of "Basic Coverage Liability ... *or* $100,000 each occurrence and $1,000,000 annual aggregate, whichever is greater" (emphasis added). Indeed, there would be no need to include reference to the $100,000 or $1,000,-000 figures at all, because the dollar limit on liability would necessarily always be *at least* $100,000 per occurrence and $1,000,-000 in the aggregate. The only sensible construction is that the term basic coverage insurance serves no substantive function in the contract beyond raising the ceiling, when appropriate, on the dollar amount of INA's liability under Coverage D.

14. INA is not obligated by its primary insurance policy with HUP to indemnify HUP for any portion of the amount paid in settlement of the underlying Melendez case. Therefore, INA is entitled to judgment against Lexington as a matter of law. Lexington may be obligated by its excess insurance policy with HUP to indemnify HUP for that portion of the amount paid in settlement of the Melendez claim in excess of $100,000. Accordingly, Lexington's motion for summary judgment will be denied.

An appropriate order follows.

### ORDER

AND NOW, this 15th day of March, 1989, upon consideration of the Motion of Third–Party Defendant, Insurance Company of North America, for Summary Judgment against Defendant and Third–Party Plaintiff, Lexington Insurance Company, and the Motion of Defendant Lexington Insurance Company for Summary Judgment against Plaintiff the Trustees of the University of Pennsylvania, the responses thereto, and the Stipulation of Facts submitted by the parties, and for the reasons set forth in the foregoing memorandum, it is hereby ORDERED that the motion of Insurance Company of North America is GRANTED, and that the motion of Lexington Insurance Company is DENIED.